**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| TAYLOR COSTELLO, individually and on behalf of all others similarly situated, | ) ) ) ) | **CLASS ACTION** |
| *Plaintiff,* | ) ) ) | **Case No.** |
| vs. | ) ) ) | **JURY TRIAL DEMANDED** |
| MOUNTAIN LAUREL ASSURANCE COMPANY, an Ohio corporation, | ) ) ) ) | |
| *Defendant.* | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Taylor Costello ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Mountain Laurel Assurance Company ("Mountain" or "Defendant") and alleges as follows:

### INTRODUCTION

1.      This is a class action on behalf of Plaintiff and all other similarly situated claimants in Tennessee who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles.  By using these valuation reports, Defendant systemically thumbs the scale when calculating the actual cash value ("ACV") of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California.

1

2. In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3. When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Mountain, to undervalue and underpay the claims by manipulating the data used to determine the actual cash value of the vehicles. Specifically, under their insurance policy terms and applicable Tennessee law, Defendant has a duty to pay, and represent that they will pay, the actual cash value of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by using a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4. Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the actual cash value of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 9.

2

5. An integral part of Defendant's fraudulent scheme is a provision of the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the loss. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6. To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7. Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

8. Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant breached its contracts and the covenant of good faith and fair dealing and was unjustly enriched.

9. As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of her bargain, and thus sustained actual damages.

3

10. By this action, Plaintiff, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

11. Plaintiff Taylor Costello, at all relevant times, was a Tennessee citizen. At all relevant times, Plaintiff was contracted with Mountain for automobile insurance. On or about March 25, 2021, Plaintiff was in a car wreck and Defendant deemed her vehicle to be a total loss.

12. Defendant Mountain Laurel Assurance Company is an Ohio company with its principal place of business in Ohio. Defendant is a subsidiary of Progressive Group entities. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

13. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Tennessee. Defendant is an Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Tennessee.

14. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

15. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

16.     On March 25, 2021, Plaintiff was involved in a car wreck and sustained physical damage to her vehicle.

17.     Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to offer her the actual cash value of her loss vehicles, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Tennessee law.

19.     When calculating their valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive Group entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on May 4, 2021. *See* Exhibit B.

20.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in

5

equipment, mileage, and vehicle configuration. Exhibit B at p. 9.

21. In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$697.00, -$680.00, -$623.00, -$681.00, and - $720.00 respectively, were applied to five of the seven comparable vehicles. Exhibit B at pp. 5-8.

22. Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustures used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 9.

23. Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what it says it will do – pay actual cash value. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 9.

24. In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the

6

illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Mountain. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

26.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

27.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Tennessee while not subjecting California claimants to the same negative adjustments.

28.     Plaintiff and each member of the class were damaged by Defendant's application

of these Projected Sold Adjustments because they were not paid the actual cash value they would have received had Defendant applied proper methodologies and appraisal standards.

29. Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for actual cash value. Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of actual cash value by Defendant would have been $506.33 higher,[1] before adding the related increase in payments for applicable sales taxes.

**Defendant's Deceptive and Unfair Appraisal Process**

30. An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the amount of loss. The appraisal provision requires the insured and the insurer to hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which theinsureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will almost certainly forego the appraisal process and accept the artificially reduced ACVof the vehicle for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

31. To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own

---

[1] $485.86 is the average of the Projected Sold Adjustments applied to five of the seven comparable vehicles in Plaintiff's valuation report.

profits. This is an issuethat cannot be resolved through an appraisal process that is part of that very scheme.

32.     Importantly, Plaintiff does not contest the *amount* of the Projected Sold Adjustment. Said another way, it is not that Defendant believes the Policy and Tennessee law allow for a 6% Projected Sold Adjustment, while Plaintiff believes only a 3% adjustment is permitted. Rather, Plaintiff alleges that *no Projected Sold Adjustment is permitted at all* as a matter of law. This question cannot be determined through appraisal.

33.     In sum, there is no dispute over the amount of loss. The dispute is over the vehicle's ACV.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Tennessee citizens insured by Defendant who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

35.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

36.     Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

37.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are

thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

38. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine actual cash value;

b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the actual cash value of Plaintiff's and Class members' total loss vehicles;

c. Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's actual cash value was deceptive;

d. Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e. Whether Defendant's acts violated their obligations under the policy of insurance;

f. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g. Whether Plaintiff and members of the Class are entitled to an injunction restraining Mountain's future deceptive acts and practices.

39. **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed

Class, including the Plaintiff, depend on a showing of the acts of Mountain giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

40.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

41.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## BREACH OF CONTRACT

42.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

11

43.     This Count is brought by the Plaintiff on behalf of the Class.

44.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

45.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

46.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

47.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

48.     Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

> 1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or
> 2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or
> 3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or
> 4. Any source for determining statistically valid fair market values that meet all of the following criteria:
> (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;

12

(ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and

(iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.

Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

49.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

50.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 2
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

51.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

52.     This Count is brought by the Plaintiff on behalf of the Class.

53.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

54.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

13

55.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

56.     Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

> 1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or
> 2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or
> 3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or
> 4. Any source for determining statistically valid fair market values that meet all of the following criteria:
> (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;
> (ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and
> (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.
> Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

57.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

14

a. Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b. Failing to pay insureds the ACV of their total-loss vehicles;

c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

58. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment

## COUNT 3
## UNJUST ENRICHMENT

59. Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

60. This Count is brought by the Plaintiff on behalf of the Class.

61. Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

62. Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

63. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

15

64.     Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

> 1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or
> 2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or
> 3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or
> 4. Any source for determining statistically valid fair market values that meet all of the following criteria:
> (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;
> (ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and
> (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.
> Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

65.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Tennessee law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

66.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

67.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

16

## COUNT 4
## DECLARATORY JUDGMENT

68.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

69.     This Count is brought by the Plaintiff on behalf of the Class.

70.     A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

71.     Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

72.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

73.     As a result of these breaches of contract, Plaintiff and the Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

17

A. An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C. Disgorgement of Defendant's profits;

D. Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E. An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F. An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: April 7, 2022

Respectfully submitted,

**BRANSTETTER, STRANCH & JENNINGS, PLLC**

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, BPR 23045
223 Rosa L Parks Ave Ste 200
Nashville, TN 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.*
Florida Bar No. 101754
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

18

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.*
Florida Bar No. 0100537
Christopher Gold, Esq.*
Florida Bar No. 088733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915
scott@edelsberglaw.com
chris@edelsberglaw.com

*pro hac vice forthcoming*

**Counsel for Plaintiff and the Proposed Class**

EXHIBIT A

*9610A TN 1006*



# TENNESSEE
## AUTO POLICY

Form 9610A TN (10/06)
version 3.0



# CONTENTS

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**PART I - LIABILITY TO OTHERS**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Additional Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Financial Responsibility Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Out-of-State Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**PART II - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Additional Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Unreasonable or Unnecessary Medical Expenses . . . . . . . . . . . . . . . . . . 8
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PART III - UNINSURED MOTORIST COVERAGE**
Insuring Agreement - Uninsured Motorist Bodily Injury Coverage . . . . . . . 9
Insuring Agreement - Uninsured Motorist Property Damage Coverage . . . 9
Additional Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Limits of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

## PART IV - DAMAGE TO A VEHICLE

Insuring Agreement - Collision Coverage ........................... 15
Insuring Agreement - Comprehensive Coverage .................... 15
Insuring Agreement - Additional Custom Parts or Equipment Coverage . 16
Insuring Agreement - Rental Reimbursement Coverage ............. 16
Insuring Agreement - Loan/Lease Payoff Coverage.................. 17
Additional Definitions ........................................... 17
Exclusions...................................................... 18
Limits of Liability ............................................... 19
Payment of Loss................................................ 21
No Benefit to Bailee ............................................ 21
Loss Payable Clause ........................................... 21
Other Sources of Recovery ..................................... 21
Appraisal...................................................... 22

## PART V - ROADSIDE ASSISTANCE COVERAGE

Insuring Agreement............................................. 22
Additional Definitions .......................................... 22
Exclusions..................................................... 23
Unauthorized Service Provider.................................. 23
Other Insurance ............................................... 23

## PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS ............. 24

## PART VII - GENERAL PROVISIONS

Policy Period and Territory ...................................... 24
Changes ...................................................... 25
Duty to Report Changes........................................ 25
Settlement of Claims........................................... 25
Terms of Policy Conformed to Statutes........................... 26
Transfer of Interest ............................................ 26
Fraud or Misrepresentation..................................... 26
Payment of Premium and Fees ................................. 26
Cancellation .................................................. 27
Cancellation Refund ........................................... 28
Nonrenewal................................................... 28
Automatic Termination.......................................... 28
Legal Action Against Us ........................................ 28
Our Rights to Recover Payment................................. 29
Joint and Individual Interests ................................... 29
Bankruptcy ................................................... 29

Case 2:22-cv-00035-TAV-CRW    Document 1    Filed 04/07/22    Page 24 of 66    PageID
#: 24

# TENNESSEE AUTO POLICY

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page. Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.
   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Auto**" means a land motor vehicle:
   a. that is a private passenger auto, pickup, or van;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles.

4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. "**Covered auto**" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.

6. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. "**Occupying**" means in, upon, or getting in, on, out or off.

1

8. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household. A foreign exchange student who resides in **your** household will qualify as a **relative** if **you** have provided **us** with the student's name, date of birth, and driver license number prior to the accident;

9. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV - Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV - Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

10. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.

11. "**We**", "**us**", and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

12. "**You**" and "**your**" mean:
    a. a person shown as a named insured on the **declarations page**; and
    b. the spouse of a named insured if residing in the same household at the time of the loss.

## PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

**ADDITIONAL DEFINITIONS**

When used in this Part I:
1. "**Insured person**" means:
    a. **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of an **auto** or **trailer**;

2

b.   any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you** or a **relative**;

c.   any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a or b above; and

d.   any Additional Interest shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a or b above.

2.   "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

## ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1.   all expenses **we** incur in the settlement of any claim or defense of any lawsuit;

2.   interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;

3.   the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;

4.   up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

5.   reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

## <u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1.   **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle or trailer while being used:
   a.   to carry persons or property for compensation or a fee; or
   b.   for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food.
   This exclusion does not apply to shared-expense car pools;

2.   any liability assumed under any contract or agreement by **you** or a **relative**;

3.   **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4.   **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered auto**;

3

5.  **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
    a.  any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
    b.  any driving activity conducted on a permanent or temporary racetrack or race-course;
6.  **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7.  **bodily injury** or **property damage** for which insurance:
    a.  is afforded under a nuclear energy liability insurance contract; or
    b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
8.  any obligation for which the United States Government is liable under the Federal Tort Claims Act;
9.  **bodily injury** or **property damage** caused by an intentional act of any **insured person**, or at the direction of any **insured person**, even if the actual injury or damage is different than that which was intended or expected;
10.  **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;
11.  **bodily injury** to **you** or a **relative**;
12.  **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
13.  **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;
14.  **bodily injury** or **property damage** arising out of **your** or a **relative's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
15.  **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you** or a **relative**;
16.  punitive or exemplary damages; or
17.  **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:
1.  claims made;

4

2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III - Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will provide insurance in accordance with the Tennessee Financial Responsibility Law of 1977 and is subject to all the provisions of that law. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

5

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance or bond, except in the case of a non-owned auto operated by an **insured person** when the only liability policy in effect for such auto is a garage liability policy.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory, or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory, or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory, or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the limits of liability under this policy.

## PART II - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay to or on behalf of an **insured person** the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on our behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

### ADDITIONAL DEFINITIONS

When used in this Part II:
1. "**Insured person**" means:
   a. **you** or a **relative**:
      (i) while **occupying** an **auto**; or

6

      (ii) when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and

    b. any other person while **occupying** a **covered auto** with the permission of **you** or a **relative**.

2. "**Medical services**" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics and prosthetic devices.

3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation or a fee; or
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food.

   This exclusion does not apply to shared-expense car pools;

2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered auto**;

3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

4. due to a nuclear reaction or radiation;

5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

6. for which the United States Government is liable under the Federal Tort Claims Act;

7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;

8. if workers' compensation benefits are available for the **bodily injury**;

9. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you** or a **relative** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

7

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation. This exclusion does not apply to the operation of a **covered auto** by **you** or a **relative**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or

15. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I - Liability To Others or Part III - Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

8

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated collection activity against the **insured person** for the unreasonable or unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**.

## PART III - UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT - UNINSURED MOTORIST BODILY INJURY COVERAGE

If **you** pay the premium for Uninsured Motorist Bodily Injury Coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

### INSURING AGREEMENT - UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

If **you** pay the premium for Uninsured Motorist Property Damage Coverage, **we** will pay for damages which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** due to **property damage**:
1. caused by an accident; and
2. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements.

9

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III:

1. "**Insured person**" means:
   a. **you** or a **relative**;
   b. any person while operating a **covered auto** with the permission of **you** or a **relative**;
   c. any person **occupying**, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a, b, or c above.

2. "**Property damage**" means physical damage to or destruction of:
   a. a **covered auto**; or
   b. property owned by an **insured person** and contained in the **covered auto** at the time of the accident.

3. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
   a. to which no liability bond or policy applies at the time of the accident;
   b. to which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;
   c. that is a hit-and-run vehicle whose owner or operator cannot be identified and that makes actual physical contact with:
      (i) **you** or a **relative**;
      (ii) a vehicle that **you** or a **relative** are **occupying**; or
      (iii) a **covered auto**;
      provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within a reasonable time after the accident and the **insured person** was not negligent in failing to determine the identity of the hit-and-run vehicle, and the operator or owner of the hit-and-run vehicle, at the time of the accident;
   d. whose owner or operator cannot be identified and which causes an accident without actual physical contact with:
      (i) **you** or a **relative**;
      (ii) a vehicle that **you** or a **relative** are **occupying**; or
      (iii) a **covered auto**;
      provided that:
      (1) the existence of such vehicle is established by clear and convincing evidence, other than evidence provided by occupants of the **covered auto**; and
      (2) the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within a reasonable time after the accident and the **insured person** is not negligent in failing to determine the identity of the vehicle, and the operator or owner of the vehicle, at the time of the accident; or

10

  e.   to which a liability bond or policy applies at the time of the accident, but the
       sum of the limits of liability available under all valid and collectible liability bonds
       and policies is less than the coverage limit for Uninsured Motorist Coverage
       shown on the **declarations page.**

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

  a.   owned by **you** or a **relative** or furnished or available for the regular use of
       **you** or a **relative**;
  b.   owned or operated by a self-insurer under any applicable motor vehicle law,
       except a self-insurer that is or becomes insolvent;
  c.   owned by any governmental unit or agency;
  d.   designed mainly for use off public roads, while not on public roads;
  e.   while located for use as a residence or premises; or
  f.   that is a **covered auto.**

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

A.   Coverage under this Part III will not apply:
  1.   to **bodily injury** sustained by any person while using or **occupying**:
       a.   a **covered auto** while being used:
            (i)   to carry persons or property for compensation or a fee; or
            (ii)  for retail or wholesale delivery, including, but not limited to, the pick-
                  up, transport, or delivery of magazines, newspapers, mail, or food.
                  This exclusion does not apply to shared-expense car pools; or
       b.   a motor vehicle that is owned by or available for the regular use of **you**
            or a **relative**. This exclusion does not apply to a **covered auto** that is
            insured under this Part III;
  2.   to **bodily injury** sustained by **you** or a **relative** while using any vehicle, other
       than a **covered auto**, without the permission of the owner of the vehicle or
       the person in lawful possession of the vehicle;
  3.   directly or indirectly to benefit any insurer or self-insurer under any of the fol-
       lowing or similar laws:
       a.   workers' compensation law; or
       b.   disability benefits law;
  4.   to any punitive or exemplary damages; or
  5.   to **bodily injury** sustained by any person if that person or the legal represen-
       tative of that person settles without **our** written consent.

B.   Coverage under this Part III will not apply to **property damage**:
  1.   sustained while a **covered auto** is being used:
       a.   to carry persons or property for compensation or a fee; or
       b.   for retail or wholesale delivery, including, but not limited to, the pickup,
            transport, or delivery of magazines, newspapers, mail, or food.
            This exclusion does not apply to shared-expense car pools;

11

   2.   resulting from, or sustained during practice or preparation for:
       a.   any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
       b.   any driving activity conducted on a permanent or temporary racetrack or racecourse; or
   3.   to a **covered auto** for which insurance:
       a.   is afforded under a nuclear energy liability insurance contract; or
       b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability.

C.  Coverage under this Part III will not apply to damage to a **trailer**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages for which this coverage applies that results from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

The limits of liability under this Part III for **bodily injury** will be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;

12

2. paid under Part I - Liability To Others; and
3. paid or payable because of **bodily injury** under any of the following or similar laws:
    a. workers' compensation law; or
    b. disability benefits law.

The limit of liability for **property damage** to a **covered auto** is the lowest of:
1. the actual cash value of the **covered auto** at the time of the accident;
2. the amount necessary to replace the **covered auto**;
3. the amount necessary to repair the **covered auto** to its pre-loss condition; or
4. the limit of liability shown on the **declarations page** for Uninsured Motorist Property Damage Coverage.

The limit of liability for **property damage** under this Part III will be reduced by all sums paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I - Liability To Others.

**We** shall not pay for **property damage** to the extent that such damages are paid or payable under any other property damage or physical damage insurance, including all sums paid or payable under Part IV - Damage To A Vehicle.

Payments for **property damage** under this Part III are subject to the following provisions:
1. any amount payable under this Part III for **property damage** shall be subject to the deductible shown on the **declarations page**;
2. no more than one deductible shall be applied to any one accident; and
3. the deductible shown on the **declarations page** shall be waived for **property damage** if:
    a. the **covered auto** is covered for Collision Coverage under Part IV - Damage To A Vehicle; and
    b. the operator of the **uninsured motor vehicle** is positively identified and is solely at fault;

**We** will not pay under this Part III any expenses paid or payable under Part II - Medical Payments Coverage.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

If an **insured person** sustains **bodily injury**:
1. while not **occupying** an **auto**, the insurance on the **auto** under which the **insured person** is an insured with the highest limits of uninsured motorist coverage shall apply, and no other uninsured motorist coverage shall apply. In no instance shall uninsured motorist coverage from more than one policy be available as primary coverage. If two or more policies provide the highest limit, all such policies will share the loss equally;
2. while **occupying** an **auto** owned by that **insured person,** only the limits of uninsured motorist coverage on the **auto** in which the **insured person** is an occupant

13

shall apply. The limits of uninsured motorist coverage shall not be increased because of multiple **autos**, whether covered under a single policy or multiple policies, and in no event shall the total amount of recovery from all policies and bonds, including any amount recovered under the **insured person's** uninsured motorist coverage, exceed the limits of the **insured person's** uninsured motorist coverage;

3.  while **occupying** an **auto** not owned by that **insured person**, the following priorities of recovery under uninsured motorist coverage apply:

    a)  first priority coverage: the uninsured motorist coverage on the **auto** in which the **insured person** was an occupant shall be the primary uninsured motorist coverage;

    b)  second priority coverage: if the first priority coverage is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the **insured person** is a named insured shall be applicable as excess coverage to the first priority coverage, provided that if the **insured person** is covered as a named insured under more than one policy, then only the policy with the highest limits of uninsured motorist coverage shall apply. If two or more policies provide the highest limit, all such policies will share the loss equally;

    c)  third priority coverage: if the first priority coverage and the second priority coverage, if applicable, are exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the **insured person** is covered other than as a named insured shall be applicable as excess coverage to the first priority coverage and the second priority coverage, provided that if the **insured person** is covered by more than one such policy, then only the policy with the highest limits of uninsured motorist coverage shall apply. If two or more policies provide the highest limit, all such policies will share the loss equally.

    In no instance may the **insured person** receive total benefits from all policies providing first, second, and third priority coverage in an amount greater than the limits of the policy providing the highest limits of uninsured motorist coverage.

## ARBITRATION

If **we** and an **insured person** cannot agree on:

1.  the legal liability of the operator or owner of an **uninsured motor vehicle**; or
2.  the amount of the damages sustained by the **insured person**;

this will be determined by arbitration if **we** and the **insured person** mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within 30 days, then on joint application by the **insured person** and **us**, the third arbitrator will be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally.

14

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:

1.   the legal liability of the operator or owner of an **uninsured motor vehicle**; and
2.   the amount of the damages sustained by the **insured person**.

The arbitrators will have no authority to award an amount in excess of the limit of liability.

**We** and an **insured person** may agree to an alternate form of arbitration.

## PART IV - DAMAGE TO A VEHICLE

### INSURING AGREEMENT - COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct, and accidental loss to a:

1.   **covered auto**, including an attached **trailer**; or
2.   **non-owned auto**;

and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct, and accidental loss to a:

1.   **covered auto**, including an attached **trailer**; or
2.   **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1.   contact with an animal (including a bird);
2.   explosion or earthquake;
3.   fire;
4.   malicious mischief or vandalism;
5.   missiles or falling objects;
6.   riot or civil commotion;
7.   theft or larceny;
8.   windstorm, hail, water, or flood; or
9.   breakage of glass not caused by **collision**.

In addition, **we** will pay for:

1.   reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and

15

2.   loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.
A combined maximum of $900, not exceeding $30 per day, will apply to these addition-
al benefits. The additional benefit for transportation expenses will not apply if **you** pur-
chased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after
**you** report the theft to **us** and ends the earliest of:
1.   when the **auto** has been recovered and returned to **you** or its owner;
2.   when the **auto** has been recovered and repaired;
3.   when the **auto** has been replaced; or
4.   72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to
be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT - ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct, and accidental loss to **custom parts or equipment** on
a **covered auto** for which this coverage has been purchased. This coverage applies
only if **you** have purchased both Comprehensive Coverage and Collision Coverage
for that **covered auto** and the loss is covered under one of those coverages. This cov-
erage applies in addition to any coverage automatically provided for **custom parts or
equipment** under Comprehensive Coverage or Collision Coverage.

## INSURING AGREEMENT - RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency
or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement
Coverage has been purchased. This coverage applies only if **you** have purchased
both Comprehensive Coverage and Collision Coverage for that **covered auto** and the
loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or
accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a
maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for
rental expenses will apply.

Rental charges will be reimbursed beginning:
1.   when the **covered auto** cannot be driven due to a loss; or
2.   if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto
repair shop or one of **our** Claims Service Centers for repairs due to the loss;

16

and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT - LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements, and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of the **auto**.

17

3. **"Mechanical parts"** means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.

4. **"Non-owned auto"** means an **auto** that is not owned by or furnished or available for the regular use of **you** or a **relative** while in the custody of or being operated by **you** or a **relative** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.

## <u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:

1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee; or
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food.

   This exclusion does not apply to shared-expense car pools;

2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;

3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected;

6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation. This exclusion does not apply to the operation of a **covered auto** by **you** or a **relative**;

7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you** or any **relative** engaged in illegal activities;

8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical, or electronic breakdown or failure; or
   d. road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;

9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;

18

    b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;

    c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and

    d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle for diminution of value;

11. to any vehicle caused directly or indirectly by:

    a. war (declared or undeclared) or civil war;

    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or

    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12. to any vehicle caused directly or indirectly by:

    a. any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or

    b. any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or

13. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:

    a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

    b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

    c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

    d. the Stated Amount shown on the **declarations page** for that **covered auto**; However, the most **we** will pay for loss to:

    a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased;

    b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.

2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:

    a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.

19

b.   If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.

c.   Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.

d.   In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

   (i)   will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

   (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

      (a)   original manufacturer parts or equipment; and

      (b)   nonoriginal manufacturer parts or equipment.

   However, if a **covered auto** is the current year model or immediate prior year model, the amount **we** will pay will not be based on the use of any non-mechanical sheet metal or plastic parts which generally constitute the exterior of a motor vehicle, including inner and outer panels, not made for or by the manufacturer of the **covered auto** without **your** permission.

e.   To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1, the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked, or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts, and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f.   To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1, an adjustment may be made for betterment or depreciation and physical condition on:

   (i)   batteries;

   (ii)  tires;

   (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

   (iv)  any other **mechanical parts** that are nonfunctioning or inoperative.

   **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

g.   The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.   Any payment to a person under this Part IV shall be reduced by any amount paid for **property damage** under this policy's Part III - Uninsured Motorist Coverage.

20

4. No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.
5. Duplicate recovery for the same elements of damages is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:
1. pay for the loss in money; or
2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. Either way, **we** will protect the interest of both. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

Protection of the lienholder's financial interest will not be affected by any act or omission by any person entitled to coverage under this policy.

If this policy is cancelled, nonrenewed, or voided, the interest of any lienholder under this agreement will also terminate.

When **we** make payment to a lienholder for loss under this policy, **we** will be subrogated to the rights of the party **we** pay, to the extent of **our** payment. When **we** pay a lienholder for a loss for which **you** are not covered, **we** are entitled to the lienholder's right of recovery against **you** to the extent of **our** payment. **Our** right to subrogation will not impair the lienholder's right to recover the full amount of its claim.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not

21

shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V - ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:

1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or

22

f.   entrapment in snow, mud, water, or sand, within 100 feet of a road or high-
way.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1.   the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the la-
bor to make replacement keys;
2.   installation of products or material not related to the disablement;
3.   labor not related to the disablement;
4.   labor on a **covered disabled auto** for any time period in excess of 60 minutes per
disablement;
5.   towing or storage related to impoundment, abandonment, illegal parking, or other
violations of law;
6.   assistance with jacks, levelers, airbags, or awnings;
7.   towing from a service station, garage, or repair shop;
8.   labor or repair work performed at a service station, garage, or repair shop;
9.   auto storage charges;
10.  a second service call or tow for a single disablement;
11.  disablement that occurs on roads not regularly maintained, sand beaches, open
fields, or areas designated as not passable due to construction, weather, or earth
movement;
12.  mounting or removing of snow tires or chains;
13.  tire repair;
14.  repeated service calls for a **covered disabled auto** in need of routine mainte-
nance or repair;
15.  disablement that results from an intentional or willful act or action by **you**, a **rela-
tive**, or the operator of a **covered disabled auto**; or
16.  a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assis-
tance and towing services, other than one of **our** authorized service representatives,
**we** will pay only reasonable charges, as determined by **us**, for:
1.   towing of a **covered disabled auto** to the nearest qualified repair facility; and
2.   labor on a **covered disabled auto** at the place of disablement;
which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service
provider will be excess over any other collectible insurance or towing protection coverage.

23

## PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** can locate the nearest claims office by calling **us** at **1-800-776-4737**. **You** or the person seeking coverage must provide **us** with all accident or loss information including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If a person or vehicle covered by this policy is involved in an **accident** or **loss** for which this insurance may apply, report it to **us** within twenty-four (24) hours or as soon as practicable.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:
1.  cooperate with **us** in any matter concerning a claim or lawsuit;
2.  provide any written proof of loss **we** may reasonably require;
3.  allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4.  promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5.  attend hearings and trials as **we** require;
6.  take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7.  allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8.  submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9.  authorize **us** to obtain medical and other records.

## PART VII - GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

## CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a **relative** obtaining a driver's license or operator's permit, or changes in:

1. the number, type, or use classification of **covered autos**;
2. operators using **covered autos**;
3. an operator's marital status;
4. the place of principal garaging of any **covered auto**;
5. coverage, deductibles, or limits of liability; or
6. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly notify **us** when:

1. **your** mailing or residence address changes;
2. the principal garaging address for a **covered auto** changes;
3. there is a change with respect to the residents in **your** household or the persons who regularly operate a **covered auto**;
4. an operator's marital status changes; or
5. **you** or a **relative** obtain a driver's license or operator's permit.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us**

25

or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
1.  made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  concealed or misrepresented any material fact or circumstance; or
3.  engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered. However, if **we** void this policy and it has been certified as proof of financial responsibility, the voiding of this policy shall not affect coverage under Part I - Liability To Others, up to the minimum limits mandated by the motor vehicle financial responsibility law of Tennessee, for an accident that occurs before **we** notify the named insured that the policy is void.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

If **we** void this policy or deny coverage due to fraudulent conduct, **you** must reimburse **us** if **we** make a payment.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by

26

the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if:
1.  **we** cancel during the first 59 days of the initial policy period; or
2.  the policy is cancelled for nonpayment of premium.

**We** will give at least 20 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for 60 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1.  nonpayment of premium;
2.  the policy was obtained through material misrepresentation;
3.  an insured person makes a false or fraudulent claim under this policy or knowingly aids or abets another in the presentation of such a claim;
4.  loss of driving privileges through suspension or revocation of an operator's license issued to **you**, any driver in **your** household, or any regular operator of a **covered auto**, if this loss of driving privileges occurred during the policy period or within the 36 months prior to the notice of cancellation;
5.  any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

27

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled, any refund due will be computed on a daily pro-rata basis. However, during the initial policy period, if this policy is cancelled at **your** request or due to nonpayment of premium, any refund due will be computed on a 90 percent of a daily pro-rata basis. A 90 percent of a daily pro-rata basis is a daily, accelerated method of calculating short-rate earned premium on cancellations. Earned premium is calculated on a daily basis. **We** will supply a copy of the table to **you** on request.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, other than for nonpayment of premium, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I - Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

28

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.





EXHIBIT B

# Vehicle Valuation Report

Prepared For  Progressive Group of Insurance Companies  (800) 321-9843



mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 21-2370053-01 | | COLLISION | TAYLOR COSTELLO 1620 PHAGAN STORE ROAD TALBOTT, TN 37877 +1 -423-4402021 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 03/25/2021 | 03/26/2021 | 05/04/2021 | 1011761697 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2018 | Toyota | Corolla SE 4 Door Sedan 1.8L 4 Cyl Gas A FWD | TN 37877 | 52,873 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| Barcelona Red Metallic | | 2T1BURHE5JC035013 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Base Value = | $14,095.85 |
| Condition - | $294.44 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $13,801.41 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| Deductible - | $1,000.00 |
| Settlement Value = | $12,801.41 |

## Settlement Value:

# $12,801.41

J.D. POWER

Mitchell **WorkCenter**
Total Loss
© 2016 Mitchell International, Inc. All Rights Reserved

# Loss Vehicle Detail

Loss vehicle  2018 Toyota Corolla | SE 4 Door Sedan | 1.8L 4 Cyl Gas A FWD

## Standard Equipment

### Exterior

| | |
|---|---|
| Black grille | Black Side Windows Trim |
| Body-colored door handles | Body-colored front bumper |
| Body-Colored Power Heated Side Mirrors w/Manual Folding and Turn Signal Indicator | Body-Colored Rear Bumper |
| Clearcoat paint | Compact Spare Tire Mounted Inside Under Cargo |
| Fixed Rear Window w/Defroster | Fully Automatic Projector Beam Led Low/High Beam Daytime Running Auto High-Beam Headlamps w/Delay-Off |
| Fully Galvanized Steel Panels | Light tinted glass |
| Lip spoiler | Steel spare wheel |
| Tires: P215/45R17 All-Season | Trunk Rear Cargo Access |
| Variable intermittent wipers | Wheels: 17" x 7.0" Machined Alloy -inc: black painted accents |

### Interior

| | |
|---|---|
| 1 12V DC Power Outlet | 2 LCD Monitors In The Front |
| 60-40 Folding Bench Front Facing Fold Forward Seatback Rear Seat | Air filtration |
| Analog Display | Automatic air conditioning |
| Automatic Equalizer | Cargo Space Lights |
| Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim | Cloth door trim insert |
| Cruise control w/steering wheel controls | Day-night rearview mirror |
| Delayed Accessory Power | Distance Pacing |
| Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination | Driver foot rest |
| Engine Immobilizer | Fabric Seat Trim w/SofTex -inc: sport fabric inserts |
| Fade-to-off interior lighting | FOB Controls -inc: Trunk/Hatch/Tailgate |
| Front Center Armrest w/Storage and Rear Center Armrest | Front Cupholder |
| Front map lights | Front Sport Bucket Seats -inc: 6-way adjustable driver's seat and 4-way adjustable front passenger seat |
| Full Carpet Floor Covering | Full cloth headliner |
| Full Floor Console w/Covered Storage and 1 12V DC Power Outlet | Gauges -inc: Speedometer, Odometer, Engine Coolant Temp, Tachometer, Trip Odometer and Trip Computer |
| HVAC -inc: Underseat Ducts | Instrument Panel Covered Bin, Driver / Passenger And Rear Door Bins |
| Integrated Roof Antenna | Interior Trim -inc: Metal-Look Instrument Panel Insert, Metal-Look Door Panel Insert, Metal-Look Console Insert and Metal-Look Interior Accents |
| Leather steering wheel | Locking glove box |
| Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints | Manual tilt/telescoping steering column |
| Outside temp gauge | Power 1st Row Windows w/Driver 1-Touch Up/Down |
| Power Door Locks w/Autolock Feature | Power Rear Windows |



| | |
|---|---|
| Radio w/Seek-Scan, Clock, Speed Compensated Volume Control, Steering Wheel Controls and Radio Data System | Radio: Entune Audio w/6.1" Screen -inc: Entune Multimedia Bundle (6.1" touch-screen display, AM/FM CD player, MP3/WMA playback capability, 6 speakers, auxiliary audio jack, USB 2.0 port w/iPod connectivity and control, advanced voice recognition, hands-free phone capability, phone book access and music streaming via Bluetooth wireless technology) and Siri Eyes Free |
| Rear cupholder | Remote Keyless Entry w/Integrated Key Transmitter, Illuminated Entry and Panic Button |
| Remote Releases -Inc: Mechanical Cargo Access and Mechanical Fuel | Seats w/Cloth Back Material |
| Trip computer | Urethane Gear Shift Knob |

Mechanical

| | |
|---|---|
| 13.2 Gal. Fuel Tank | 3820# Gvwr |
| 390CCA Maintenance-Free Battery w/Run Down Protection | 4-Wheel Disc Brakes w/4-Wheel ABS, Front Vented Discs, Brake Assist and Hill Hold Control |
| 4.76 Axle Ratio | 80 amp alternator |
| Electric Power-Assist Speed-Sensing Steering | Front And Rear Anti-Roll Bars |
| Front-wheel drive | Gas-pressurized shock absorbers |
| Single Stainless Steel Exhaust w/Chrome Tailpipe Finisher | Strut Front Suspension w/Coil Springs |
| Torsion beam rear suspension w/coil springs | Transmission w/Driver Selectable Mode and Sequential Shift Control w/Steering Wheel Controls |

Safety

| | |
|---|---|
| ABS And Driveline Traction Control | Airbag Occupancy Sensor |
| Back-up camera | Curtain 1st And 2nd Row Airbags |
| Driver Knee Airbag and Passenger Cushion Front Airbag | Dual Stage Driver And Passenger Front Airbags |
| Dual Stage Driver And Passenger Seat-Mounted Side Airbags | Electronic stability control (ESC) |
| Lane Departure Alert (lda) w/Steering Assist Lane Departure Warning | Lane Departure Alert (lda) w/Steering Assist Lane Keeping Assist |
| Low Tire Pressure Warning | Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners |
| Pre-Collision System (pcs) Forward Collision | Rear child safety locks |
| Side impact beams | |

## Packages

CARPET MAT PACKAGE (TMS)
-inc: carpet floor mats & trunk mat

# Loss Vehicle Base Value

Loss vehicle   2018 Toyota Corolla |  SE 4 Door Sedan | 1.8L 4 Cyl Gas A FWD

## Comparable Vehicle Information

Search Radius used for this valuation: 75 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 33,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 34,573 | 37660 | 54 miles | $14,875.00 Sold Price | $14,056.06 |
| 2 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 82,016 | 37923 | 41 miles | $13,595.00 List Price | $14,484.62 |
| 3 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 31,669 | 37660 | 54 miles | $15,715.00 List Price | $14,010.63 |
| 4 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 56,374 | 28806 | 60 miles | $15,000.00 List Price | $14,621.79 |
| 5 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 63,212 | 28806 | 60 miles | $13,734.00 List Price | $13,561.91 |
| 6 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 40,366 | 28806 | 60 miles | $15,020.00 List Price | $13,893.46 |
| 7 | 2018 TOYOTA COROLLA SE 4D SDN 4 1.8NORMAL GAS A 2WD | 30,140 | 28806 | 60 miles | $15,875.00 List Price | $14,042.51 |

**Base Value:   $14,095.85**

# Loss Vehicle Adjustments

Loss vehicle:  2018 Toyota Corolla | SE 4 Door Sedan | 1.8L 4 Cyl Gas A FWD

## Condition Adjustments

Condition Adjustment:  -$294.44          Overall Condition:  2.90-Good          Typical Vehicle Condition:  3.00

| Category | Condition | Condition $ | Comments |
|---|---|---|---|
| **Interior** | | | |
| SEATS | 3 Good | $0.00 | |
| DASH/CONSOLE | 3 Good | $0.00 | |
| HEADLINER | 3 Good | $0.00 | |
| DOORS/INTERIOR PANELS | 3 Good | $0.00 | |
| GLASS | 3 Good | $0.00 | |
| CARPET | 3 Good | $0.00 | |
| **Exterior** | Typical | $0.00 | all dmg in loss |
| **Mechanical** | | | |
| ENGINE | 3 Good | $0.00 | |
| TRANSMISSION | 3 Good | $0.00 | |
| **Tire** | 1 Poor | -$294.44 | 4 4 0 1 11/32nds see notes |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments

used highest rating for the missing tire

Mitchell **WorkCenter**
Total Loss

# Comparable Vehicles

Loss vehicle  2018 Toyota Corolla | SE 4 Door Sedan | 1.8L 4 Cyl Gas A FWD

---

**2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD**　　　　**Sold Price: $14,875.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2T1BURHE6JCXXXXXX | | 03/10/2021 | 37660 | 54 miles |

Source

FRANCHISE SALE - J.D. POWER
AND ASSOCIATES

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 52,873 | 34,573 | -$981.51 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $162.57 |
| | | Total Adjustments: | -$818.94 |
| | | **Adjusted Price:** | **$14,056.06** |

---

**2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD**　　　　**List Price: $13,595.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2T1BURHE8JC017010 | 1190160299 | 04/03/2021 | 37923 | 41 miles |

Source

DEALER WEB LISTING -
AUTOTRADER.COM
DRIVETIME KNOXVILLE
8801 KINGSTON PIKE
KNOXVILLE TN 37923
865-824-0770

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | $0.00 |
| Mileage | 52,873 | 82,016 | $741.04 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $148.58 |
| | | Total Adjustments: | $889.62 |
| | | **Adjusted Price:** | **$14,484.62** |

Claim # 21-2370053-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 5

## 2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD

**List Price: $15,715.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2T1BURHE7JC119091 | 10332 | 02/22/2021 | 37660 | 54 miles |

Source

DEALER WEB LISTING - VAST.COM
STONE DRIVE CARS
100 E STONE DRIVE
KINGSPORT TN 37660
423-765-1320

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$697.00 |
| Mileage | 52,873 | 31,669 | -$1,171.50 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $164.13 |

Total Adjustments: -$1,704.37
**Adjusted Price: $14,010.63**

## 2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD

**List Price: $15,000.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2T1BURHEXJC026050 | JC026050P | 03/20/2021 | 28806 | 60 miles |

Source

DEALER WEB LISTING -
AUTOTRADER.COM
FRED ANDERSON TOYOTA OF
ASHEVILLE
777 BREVARD ROAD
ASHEVILLE NC 28806
828-633-4229

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$680.00 |
| Mileage | 52,873 | 56,374 | $145.29 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $156.50 |

Total Adjustments: -$378.21
**Adjusted Price: $14,621.79**

## 2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD

List Price: **$13,734.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5YFBURHE9JP776474 | MD076445A | 01/30/2021 | 28806 | 60 miles |

Source

DEALER WEB LISTING - AUTOTRADER.COM
FRED ANDERSON TOYOTA OF ASHEVILLE
777 BREVARD ROAD
ASHEVILLE NC 28806
828-633-4229

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$623.00 |
| Mileage | 52,873 | 63,212 | $307.62 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $143.29 |

Total Adjustments: -$172.09
**Adjusted Price: $13,561.91**

---

## 2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD

List Price: **$15,020.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5YFBURHE6JP765027 | JP765027P | 02/01/2021 | 28806 | 60 miles |

Source

DEALER WEB LISTING - VAST.COM
JIM BARKLEY TOYOTA
777 BREVARD ROAD
ASHEVILLE NC 28806
828-667-8888

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$681.00 |
| Mileage | 52,873 | 40,366 | -$602.25 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $156.71 |

Total Adjustments: -$1,126.54
**Adjusted Price: $13,893.46**

## 2018 TOYOTA COROLLA SE 4D SDN 4 1.8 NORMAL GAS A2WD                    List Price: **$15,875.00**

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2T1BURHE5JC028241 | HS035228Q | 03/02/2021 | 28806 | 60 miles |

Source

DEALER WEB LISTING - CARS.COM

FRED ANDERSON TOYOTA OF
ASHEVILLE

777 BREVARD RD

ASHEVILLE NC 28806

828-667-8888

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$720.00 |
| Mileage | 52,873 | 30,140 | -$1,278.12 |
| Equipment | | | |
| CARPET MAT PACKAGE (TMS) | Yes | No | $165.63 |

Total Adjustments: -$1,832.49

Adjusted Price: **$14,042.51**

# Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2018 Toyota Corolla SE | 4 Door Sedan 1.8L 4 Cyl Gas  FWD | $20,495.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.


Mitchell **WorkCenter**
Total Loss

Claim # 21-2370053-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 9