UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TAYLOR COSTELLO, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIN LAUREL ASSURANCE COMPANY,<br><br>Defendant. | No.: 2:22-CV-35-TAV-CRW |

# MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on defendant's Motion to Stay Proceedings [Doc. 174]. Plaintiffs responded in opposition [Doc. 176], and defendant replied [Doc. 177]. The parties have filed supplemental authority in support of their positions [Docs. 178–180, 182–187, 198], and associated responses [Docs. 181, 199]. The Court has carefully considered the matter and, for the reasons stated below, will **GRANT** the motion to stay [Doc. 174].

I.  Background

On April 7, 2022, plaintiff, individually and behalf of all others similarly situated, filed the instant lawsuit, challenging defendant's alleged method of estimating the actual cash value ("ACV") of her total-loss vehicle [Doc. 1]. According to plaintiff, defendant uses valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the ACV of loss vehicles [*Id.* at 1]. By using these valuation reports, plaintiff alleges that defendant "systematically thumbs the scale" when calculating the ACV "by applying

so-called 'Projected Sold Adjustments' that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California" [*Id.*]. Plaintiff alleges that applying the "Projected Sold Adjustment" ("PSA") results in "a significant downward adjustment to the base values of the comparable vehicles used to calculate the actual cash value of Plaintiff's and Class members' total loss vehicles" [*Id.* at 2].

On November 10, 2023, plaintiff moved for class certification in this case [Doc. 137],[1] which the defendant opposed [Doc. 141]. United States Magistrate Judge Cynthia R. Wyrick issued a Report and Recommendation ("R&R") which found that the requirements of Federal Rule of Civil Procedure 23 had been met and recommended certification [Doc. 156]. Defendant filed objections to the R&R and its recommendation of class certification [Sealed Doc. 158; Doc. 160].[2] Plaintiff responded [Doc. 167], and defendant replied [Doc. 173]. Both parties filed supplemental authority [Docs. 170, 172, 175].

---

[1] Plaintiff initially moved for class certification on March 10, 2023 [Doc. 67], but pursuant to the Court's Order [Doc. 129], plaintiff refiled her motion with modified exhibits.

[2] These documents are the same save for the redactions made to the unsealed version.

2

Case 2:22-cv-00035-TAV-CRW    Document 214    Filed 09/05/24    Page 2 of 13    PageID #: 13949

On May 8, 2024, defendant filed this motion to stay the proceedings [Doc. 174]. Specifically, defendant seeks to stay this case pending a ruling from the Sixth Circuit in *In re State Farm Mutual Auto Insurance Company*, No. 23-0508 (6th Cir. Apr. 30, 2024) (granting Federal Rule of Civil Procedure 23(f) petition for review of class certification) (the "*Clippinger*" Appeal) [*Id.* at 1]. Defendant argues that the outcome of the *Clippinger* Appeal is potentially dispositive of class certification here, and thus, a stay would allow this Court to account for impending Sixth Circuit authority when analyzing the parties' arguments and the pending R&R for class certification [*Id.*]. Additionally, defendant argues that a stay in the instant case will further the interests of judicial economy, serve the public interest, and not prejudice the plaintiff [*Id.* at 5–7].

The claims underlying the *Clippinger* Appeal are similar to the claims in this case. *See Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-2482, 2023 WL 7213796 (W.D. Tenn. Aug. 25, 2023). In *Clippinger*, the plaintiff filed a putative class action alleging that defendant State Farm breached its insurance contracts and violated Tennessee law by relying on valuation reports prepared by Audatex North America, Inc. ("Audatex"). *Id.* at *1–3. Specifically, plaintiff claimed that defendant paid insureds less than ACV because of Audatex's "typical negotiation adjustment," ("TNA"), an adjustment like that of the PSA in the instant case. *Id.* The court in *Clippinger* granted the plaintiff's motion for class certification, rejecting defendant's arguments as to the "typicality" and "predominance" elements. *Id.* at *8–9, *11–14. Ultimately, the court found that plaintiff's

3

theory of legal injury, breach of contract, would establish standing, regardless of whether any class member suffered any actual financial harm. *Id.* at *9, *12–16.

Now on appeal, defendant State Farm's petition to the Sixth Circuit has presented the following issues: (1) whether plaintiffs alleging a common law breach of contract claims must prove an injury in fact under the Supreme Court's *TransUnion* decision, as opposed to mere legal injury; and (2) whether, in light of *TransUnion*, district courts in the Sixth Circuit must specifically address the manageability of a proposed class trial before certification [Doc. 174, p. 3; Doc. 174-2, pp. 15–16].

## II.  Standard of Review

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (citation and quotations omitted). The Court maintains "broad discretion to stay proceedings as an incident to its power to control its own docket." *Id.* at 627 (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). In determining whether to stay a case, the Court may consider factors like (1) the potentiality of another case having a dispositive effect on the case to be stayed, (2) the judicial economy to be saved by waiting on a dispositive decision, (3) public welfare, and (4) the hardship/prejudice to the party opposing the stay. *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 931 (N.D. Ohio 2021) (internal citations omitted); *Higgins v. BAC Home Loans Servicing, LP*, No. 5:12-cv-183, 2012 WL

5332476, at *2 (E.D. Ky. Oct. 29, 2012); *see also Attractive Surgical, LLC v. Cleveland Clinic Found.*, No. 1:19 CV 1212, 2019 WL 11075734, at *3 (N.D. Ohio Oct. 31, 2019) ("In determining whether to grant a stay, courts examine the totality of the circumstances, including the stage of the litigation, whether a stay would simplify the issues, and whether a stay would unduly prejudice the non-moving party.").

### III. Analysis

#### A. Potential for Dispositive Effect

While defendant argues that resolution of the issues presented in the *Clippinger* Appeal would significantly impact the present case [Doc. 174, p. 4], the plaintiff disagrees [Doc. 176, pp. 1–2]. As defendant notes, plaintiff has relied on *Clippinger* thus far on the issue of class certification, claiming that *Clippinger* "is the fourth consecutive federal court decision granting class certification brought by Plaintiff's Counsel based on evidence and claims that are *materially identical* to the claims in this lawsuit" [Doc. 114 (emphasis added); *accord* Doc. 137, pp. 14, 20]. Concerning the *Clippinger* Appeal, however, the plaintiff asserts that the primary issue on appeal, defendant State Farm's appraisal-related defenses, is an issue absent from this action, and therefore, the appellate decision will not be dispositive [Doc. 176, pp. 1–2]. Further, plaintiff contends that the *Clippinger* Appeal will likely turn on case specific matters, providing no guidance to this Court [Doc. 176, p. 2]. In its reply, defendant points the Court to the questions presented in defendant State Farm's petition, arguing that these issues have implications beyond *Clippinger* [Doc. 177, p. 2; *see* Doc. 174-2, pp. 15–16].

5

There is significant potential for the *Clippinger* Appeal to have a dispositive effect in this case. First, while the *Clippinger* case and the present case are not precisely identical, they share similar facts and common questions of law regarding class standing and class trial manageability in the face of individualized valuations. Second, while plaintiff fixates on the appraisal-related defenses raised, these defenses are not the sole basis for defendant State Farm's Rule 23(f) interlocutory appeal [*See* Doc. 174-2, pp. 15–16]. Defendant State Farm raises two broad issues on appeal, both considering the Supreme Court's decision in *TransUnion*: (1) whether plaintiffs alleging a common law breach of contract claims must prove an injury in fact as opposed to a legal injury; and (2) whether district courts in the Sixth Circuit must specifically address the manageability of a proposed class trial before certification [*Id.*].

An appellate decision on either of these questions may provide guidance to this Court and affect its ruling on class certification. For example, if the Sixth Circuit confirms *TransUnion*'s applicability to common law breach of contract claims, this Court could be precluded from certifying such claims premised on a legal injury alone. This is of particular concern in this case as defendant, in their response to plaintiff's motion to certify the class, argues and presents evidence that some members of the proposed class benefitted, or suffered no economic injury, from defendant's ACV calculation [Doc. 141, p. 28; Sealed Doc. 142-1, pp. 4, 9].

In response to defendant's argument that it may have overvalued other elements of the ACV calculation resulting in no economic injury for some proposed class members,

6

plaintiff relies on *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452 (6th Cir. 2020).  In *Hicks*, defendant insurer argued that "some insureds were not damaged because it [] overestimated ACV payments to such a degree that the deduction of labor depreciation resulted in no damages."  965 F.3d at 460.  Plaintiff argues that defendant's argument in *Hicks* is analogous to defendant's argument here, which the Sixth Circuit rejected, stating that any such overestimations may merely constitute an "error in favor of the insured," which would be "a common legal question capable of classwide resolution" [Doc. 139, p. 10]. *Id.* at 460–61.  In other words, the fact that some proposed class members did not suffer an injury in fact, and merely suffered a legal injury, did not preclude a certification of the class.

The *Clippinger* Appeal concerns this very issue post-*TransUnion*, as the district court in *Clippinger* concluded that a "legal injury" under *Hicks* would exist whether or not defendant State Farm's payment was equal to or greater than the ACV of the class member's totaled vehicle [Doc. 174-2, p. 13].  *See Clippinger*, 2023 WL 7213796, at *9.  Here, plaintiff relies on the same premise, arguing that any overestimation of a separate element of the ACV valuation "is a question separate from this class litigation," and plaintiff's claims regard only "a discreet portion of the formula that is easily segregated and quantified" [Doc. 139, p. 10 (quoting *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711–12 (5th Cir. 2020))].  Ultimately, plaintiff's sole contention with defendant's application of the PSA, disregarding any other aspects of the ACV valuation and their potential overestimation, allows for those who have only suffered a legal injury to form a

7

portion of the proposed class in this. This goes to the very heart of the *Clippinger* Appeal [Doc. 174-2, pp. 13–16].

For these reasons, the Court finds the *Clippinger* Appeal to be potentially dispositive by way of class certification, and in turn, this factor favors a stay in this case.

### B. Judicial Economy

Defendant argues that a stay in this case would further the interests of judicial economy, as awaiting guidance from the Sixth Circuit would blunt the risk of wasted judicial effort [Doc. 174, p. 5]. All of the time, effort, and expense spent deciding class certification and continuing to litigate this case, the defendant contends, could prove futile based on the outcome of the *Clippinger* Appeal [*Id.*]. Defendant further argues that staying the case would prevent the parties from potentially having to relitigate the class certification issue after the *Clippinger* Appeal is decided [*Id.* at 6]. A stay would obviate the potential need for supplemental briefing, or re-briefing, and avoid a later motion for decertification [*Id.*]. In response, plaintiff points to the considerable resources that have already gone into the class certification issue, including the fact that an R&R has already been entered [Doc. 176, p. 4].

The Court acknowledges the significant resources already spent, by both the Court and the parties, on the issue of class certification. Were the Court to proceed with this case as plaintiff requests, however, a *Clippinger* Appeal decision providing contrary guidance to any issue this Court might decide in the intervening period would necessitate the later expenditure of additional resources by both parties and the Court. Furthermore, if the Court

8

certified the class but subsequently had to decertify based on the *Clippinger* Appeal outcome, this would undoubtedly be a costly waste of resources and impede judicial efficiency.

Defendant also cites to, and supplements the record with, factually similar cases that demonstrate a split in authority on the issue of class certification in circuits across the country [Doc. 174, pp. 5–6; Docs. 172-1, 172-2, 172-3, 178-1, 179-1, 180-1, 183-1, 184-1, 185-1, 187-1]. This split, defendant argues, "will make resolution of class certification issues more difficult," and thus, "a stay . . . will allow the parties and this Court to obtain guidance from the Sixth Circuit" [Doc. 174, p. 6]. Plaintiff argues that it is unlikely the Sixth Circuit will reverse the order in *Clippinger* granting class certification as the *Clippinger* opinion is "cogent, well-reasoned, and correctly decided" and nine other district courts "have found class treatment appropriate on materially identical claims challenging the PSAs, and analogous adjustments" [Doc. 176, pp. 2–3].

Irrespective of the outcome of the *Clippinger* Appeal, the Sixth Circuit's opinion may provide the Court with guidance as to how district courts should properly apply *TransUnion* in cases involving class standing against a private defendant. Furthermore, the decision may clarify the obligation district courts have to analyze trial manageability issues before certifying a class under Federal Rule of Civil Procedure 23(b)(3). Whether the Sixth Circuit ultimately affirms or reverses the class certification order in *Clippinger* does not diminish the value of the guidance the decision may provide. And considering the unsettled landscape of class certification in cases challenging an insurer's determination

9

of ACV,[3] the Court, and the parties, would benefit from the Sixth Circuit's guidance. Additionally, one other court in this circuit has already granted a stay pending the *Clippinger* Appeal in a case with similar claims and legal theories [Doc. 183]. *Watson v. Progressive Direct Ins. Co.*, No. 5:22-cv-203, Doc. 121 (E.D. Ky. June 21, 2024) ("[T]he risk of incongruent ruling outweighs the need for judicial speed because the Sixth Circuit in *Clippinger* likely will address how . . . *TransUnion* applies to common law claims like those raised by [plaintiff].").

For the reasons above, judicial economy would be benefitted from a stay in this case.

### C. Public Welfare

In its motion to stay, defendant highlights the risk of confusion among insureds if this Court granted certification, but the *Clippinger* Appeal outcome required decertification [Doc. 174, p. 7]. Furthermore, in defendant's reply, it states that the "public does not have an interest in this Court issuing a premature class certification order that may run afoul of ensuing Sixth Circuit authority" [Doc. 177, p. 5]. And even if there were such interest, it

---

[3] *See Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 422–23 (5th Cir. 2023); *Lara v. First Nat'l Ins. Co.*, 25 F.4th 1134, 1140 (9th Cir. 2022); *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 577 (8th Cir. 2017). Some district courts have certified classes in similar cases, *see Reynolds v. Progressive Direct Ins. Co.*, No. 5:22-CV-503, 2024 WL 1551226 (N.D. Ala. Apr. 3, 2024), *petition for interlocutory appeal denied*, No. 24-90006 (11th Cir. June 14, 2024); *Chadwick v. State Farm Mut. Ins. Co.*, No. 4:21-cv-1161, 2022 WL 18779022 (E.D. Ark. Mar. 18, 2024); *Curran v. Progressive Direct Ins. Co.*, 345 F.R.D. 498 (D. Colo. Dec. 18, 2023), but several of these cases are now on appeal, *see Progressive Direct Ins. Co. v. Freeman*, No. 24-177, Doc. 37 (4th Cir. July 24, 2024); *In re Progressive Paloverde Ins. Co.*, No. 24-8003 (7th Cir. Apr. 8, 2024); *Progressive Specialty Ins. Co. v. Drummond*, No. 23-8035 (3d Cir. Feb. 8, 2024); *Ambrosio, et al. v. Progressive Universal Ins. Co. et al.*, No. 24-2708 (9th Cir. 2024).

10

would be outweighed by the need to promote judicial efficiency and minimize inconsistent rulings [*Id.*]. Plaintiff contends that public interest will not be served by a stay because the public has an interest in the prompt resolution of cases [Doc. 176, p. 6].

Conserving judicial time and resources, especially in the face of potentially duplicative proceedings, serves the public interest. *See Choon's Design Inc. v. Tristar Prod., Inc.*, No. 14-10848, 2018 WL 11351661, at *3 (E.D. Mich. July 13, 2018) (citing *Astec Am.., Inc. v. Power-One, Inc.*, No. 6:07-cv-464, 2008 WL 11441994, at *3 (E.D. Tex. July 15, 2008)). Additionally, while there may be some broad public interest in the prompt resolution of cases in one's district, for the reasons discussed *infra* in Section III(D), there will be delay in this case regardless of the Court's ruling as to this Motion to Stay. Thus, public welfare and interest favors a stay in this case.

### D. Prejudice to Plaintiff

The defendant contends that the plaintiff would not be prejudiced by a stay, arguing at worst, the plaintiff would face a brief delay in the resolution of this case [Doc. 174, p. 7]. Plaintiff counters, arguing that a stay would prejudice them [Doc. 176, pp. 3–4]. Specifically, plaintiff argues that this case has been pending since April 2022, the R&R [Doc. 156] has been issued, and the parties have already devoted substantial amounts of time and resources on class certification [*Id.*]. Plaintiff also avers that if the Court adopts the R&R, "it is almost certain that [defendant] will take a shot at interlocutory review no matter (1) when this Court issues its order on [defendant's] objections to the R&R or (2) how the Sixth Circuit rules" [*Id.* at 4].

11

Mere delay, on its own, does not establish undue prejudice. *See Lane Shark USA, LLC v. Titan Implement LLC*, No. 1:19-cv-326, 2021 WL 12097703, at *3 (E.D. Tenn. May 21, 2021) (quoting *Horizon Global Ams., Inc. v. Curt Mfg., LLC*, No. 2:17-cv-11879, 2019 WL 8750416, at *6 (E.D. Mich. Dec. 14, 2019)); *see also Sec'y of U.S. Dep't of Lab. V. Kavalec*, No. 1:19-CV-968, 2019 WL 5684462 (N.D. Ohio Nov. 1, 2019); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14CV2022, 2016 WL 9782345, at *4 (N.D. Ohio Apr. 15, 2016). Furthermore, plaintiff's opposition to delay is contradictory, given the plaintiff's assertion that if the Court does not grant class certification, plaintiff "would likely petition for interlocutory review—and would likely do so irrespective of how the Sixth Circuit resolves the *Clippinger* appeal" [Doc. 176, p. 5]. Thus, plaintiff concedes that, regardless of the Court granting a stay pending the outcome of the *Clippinger* Appeal, the case will be delayed as either she or the defendant will petition for interlocutory review after the Court rules on her Motion to Certify [Doc. 137]. Furthermore, plaintiff's concern over the substantial resources she has already spent in this case is puzzling given the certainty of an interlocutory appeal will undoubtedly necessitate further resources. Therefore, this factor weighs in favor of granting a stay.

**IV.    Conclusion**

For the reasons discussed above, the Court finds that a stay is warranted in this case. Defendant's motion to stay [Doc. 174] is therefore **GRANTED**. This case is hereby **STAYED** pending the Sixth Circuit's decision in *In re State Farm Mutual Auto Insurance Company*, No. 23-0508 (6th Cir. Apr. 30, 2024). Defendant is **ORDERED** to notify the

12

Court within **10 days** of the Sixth Circuit's decision. Within **21 days** of the Sixth Circuit's decision in *In re State Farm Mutual Auto Insurance Company*, No. 23-0508 (6th Cir. Apr. 30, 2024), both parties **SHALL** file any desired supplements based upon that decision.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE